**UNITED STATES of America**

v.

**Terry FELDER, Appellant.**

**No. 82–1420.**

United States Court of Appeals, Third Circuit.

Argued March 9, 1983.

Decided April 25, 1983.

Mary C. Spearing (Argued), Asst. U.S. Atty., Peter F. Vaira, U.S. Atty., Walter S. Batty, Jr., Asst. U.S. Atty., Chief of Appeals, Philadelphia, Pa., for appellee.

Steven A. Morley (Argued), Robert J. O'Shea, Jr., Defender Ass'n of Philadelphia,

Federal Court Div., Philadelphia, Pa., for appellant.

Before SEITZ, Chief Judge, and HIGGINBOTHAM and SLOVITER, Circuit Judges.

## OPINION OF THE COURT

SLOVITER, Circuit Judge.

Appellant Terry Felder challenges both the proceedings leading to his conviction and his sentence under the dangerous special offender statute, 18 U.S.C. § 3575. We find no reversible error relating to Felder's conviction.[1] With regard to Felder's claim that the sentence was disproportionate in severity to the maximum sentence otherwise provided for his felony, we vacate and remand for resentencing because the trial court gave no express consideration to the statutory requirement of proportionality.

### I.

Terry Felder was convicted by a jury of one count of violating 18 U.S.C.App.

§ 1202(a)(1), which proscribes possession of firearms by a convicted felon. The maximum sentence set forth for this offense is two years. Felder, however, was alleged by the government to be a dangerous special offender within the meaning of 18 U.S.C. § 3575. A defendant is characterized as a special offender if s/he is a recidivist (essentially one who has committed two or more previous felonies, one of them within the last five years); a professional criminal (if the current felony arose from a pattern of conduct "which constituted a substantial source of his income, and in which he manifested special skill or expertise"); or an organized criminal (if the felony involved a criminal conspiracy in which the defendant played a supervisory role). 18 U.S.C. § 3575(e); *see Rummel v. Estelle*, 445 U.S. 263, 299, 100 S.Ct. 1133, 1152, 63 L.Ed.2d 382 (1980) (Powell, J., dissenting). A special offender is further characterized as dangerous if "a period of confinement longer than that provided for [defendant's] felony is required for the protection of the public from further criminal conduct by the

---

1. Felder challenges the proceedings below on four bases: that the trial court committed reversible error by dismissing as moot Felder's motion *in limine* without making the findings required by Fed.R.Evid. 609(a)(1); that the prosecuting attorney denied Felder a fair trial by arguing facts that were not in evidence; that the prosecutor's statement that the government did not believe the testimony of the chief defense witness was substantially prejudicial to the defense; and that the charge contained reversible error. After full consideration we reject the first three of these arguments without discussion.

The challenged portion of the trial judge's charge to the jury discussed the role of the United States Attorney in the following language:

The United States Attorney is the representative not of an ordinary party to a controversy, but of a sovereignty whose obligation to govern impartially is as compelling as its obligation to govern at all; and whose interest, therefore, in a criminal prosecution is not that it shall win a case, but that justice shall be done. As such, he or she is in a peculiar and very definite sense the servant of the law, the twofold aim of which is that guilt shall not escape or innocence suffer. He or she may prosecute with earnestness and vigor—indeed, he or she should do so. But, while he or she may strike hard blows, he or she is not at liberty to strike foul ones.

It is as much his or her duty to refrain from improper methods calculated to produce a wrongful conviction as it is to use every legitimate means to bring about a just one.

Remember that the question can never be, will the Government win or lose the case; the Government always wins when justice is done.

The first paragraph of this charge is taken virtually verbatim, albeit out of context, from *Berger v. United States*, 295 U.S. 78, 88, 55 S.Ct. 629, 633, 79 L.Ed. 1314 (1935). This excerpt reflected the *Berger* Court's view that the prosecutor has a particular obligation to act properly in criminal cases and explained why the Court ordered a new trial because of improper prosecutorial remarks. There is no indication that the Supreme Court intended this paragraph to be used as a standard instruction in criminal cases, and we see no reason why it should be used in this manner. We agree with the appellant's assertion that it may be susceptible of being misconstrued by the jury as suggesting that defense counsel is not guided by an ethical obligation equal in strength to that of the prosecutor. Nonetheless, we do not believe that, in this case, inclusion of this language was "sufficiently prejudicial to [the defendant] as to require reversal." *Schneble v. Florida*, 405 U.S. 427, 432, 92 S.Ct. 1056, 1059, 31 L.Ed.2d 340 (1972).

defendant." 18 U.S.C. § 3575(f). Such persons may be sentenced "to imprisonment for an appropriate term not to exceed twenty-five years and not disproportionate in severity to the maximum term otherwise authorized by law for such felony." 18 U.S.C. § 3575(b).[2]

After a hearing, the trial court determined that Felder was a dangerous special offender, primarily because of his two prior felony convictions and various prior arrests. The court then sentenced Felder to twelve years imprisonment, which Felder here asserts violates 18 U.S.C. § 3575 because it is "disproportionate in severity" to the two year maximum sentence for the underlying offense.

## II.

Preliminarily, we address our standard of review of the district court's sentencing decision. In the usual criminal case, our review of sentences imposed by the district court is extremely circumscribed. If a sentence is within the statutory limitation and there is no defect in the sentencing procedure, we do not interfere with the trial court's discretion as to the sentence imposed. *See United States v. Del Piano,* 593 F.2d 539, 540 (3d Cir.) (per curiam), *cert. denied,* 442 U.S. 944, 99 S.Ct. 2889, 61 L.Ed.2d 315 (1979); *see also United States v. Dickens,* 695 F.2d 765, 782 n. 26 (3d Cir.1982) (sentences within the maximum allowed by statute are not generally reviewable on appeal).

Sentences imposed on a dangerous special offender under 18 U.S.C. § 3575, however, are expressly made reviewable by this court under 18 U.S.C. § 3576 which provides, in pertinent part:

2. Section 3575(b) provides:
   If it appears by a preponderance of the information, including information submitted during the trial of such felony and the sentencing hearing and so much of the presentence report as the court relies upon, that the defendant is a dangerous special offender, the court shall sentence the defendant to imprisonment for an appropriate term not to exceed twenty-five years and not disproportionate in sev-

With respect to the imposition ... of a sentence after proceedings under section 3575 ..., a review of the sentence on the record of the sentencing court may be taken by the defendant or the United States to a court of appeals.... Review of the sentence shall include review of whether the procedure employed was lawful, the findings made were clearly erroneous, or the sentencing court's discretion was abused. The court of appeals on review of the sentence may, after considering the record, including the entire presentence report, information submitted during the trial ... and the sentencing hearing, and the findings and reasons of the sentencing court, affirm the sentence, impose or direct the imposition of any sentence which the sentencing court could originally have imposed, or remand for further sentencing proceedings and imposition of sentence, except that a sentence may be made more severe only on review of the sentence taken by the United States and after hearing.

The importance of appellate review of the sentences imposed on dangerous special offenders was stressed in the legislative history. The Senate Report called appellate review of sentences "the most effective technique" for "reducing the incidence of disparate and unwise sentences." S.Rep. No. 617, 91st Cong., 1st Sess. 92 (1969) [hereinafter cited as S.Rep. No. 617]. Although a principal concern of the Committee was what was viewed as inadequate sentences for organized crime offenders, *see id.* at 85, it is clear that the appellate review provision was designed not only to correct "inadequate sentences", a function upheld in *United States v. DiFrancesco,* 449 U.S. 117, 101 S.Ct. 426, 66 L.Ed.2d 328 (1980), but also to provide a vehicle where-

erity to the maximum term otherwise authorized by law for such felony. Otherwise it shall sentence the defendant in accordance with the law prescribing penalties for such felony. The court shall place in the record its findings, including an identification of the information relied upon in making such findings, and its reasons for the sentence imposed.

by the court of appeals could remedy "individual excessive sentences." S.Rep. No. 617 at 92. As the Senate Report states,

> appellate review of sentences can contribute to rationality in sentencing by making sentencing decisions more public and promoting the evolution of sentencing principles, enhance respect for our system of justice, relieve pressure on appellate courts now lacking sentence review power to find grounds to reverse convictions on which unconscionable sentences were imposed, and aid rehabilitation of defendants by affording opportunities to object to sentences.

*Id.* at 92–93.

The range of our review is broad. The statute provides that the court of appeals may examine the entire record and hold a hearing, if necessary, and then affirm, resentence the defendant or remand for resentencing. Indeed, as the Supreme Court held in *United States v. DiFrancesco,* 449 U.S. at 141, 101 S.Ct. at 439, on appeal by the prosecutor, the appellate court may increase the sentence if it finds "the trial court has abused its discretion or employed unlawful procedures or made clearly erroneous findings." *Cf. United States v. Stewart,* 531 F.2d 326, 331 (6th Cir.), *cert. denied,* 426 U.S. 922, 96 S.Ct. 2629, 49 L.Ed.2d 376 (1976) ("the reviewing court['s] . . . statutory power to vacate or modify is unrestricted.") In this case, Felder asks this court to vacate the sentence and impose "an appropriate sentence." Brief for Appellant at 25–27.

## III.

Felder does not here contest the finding of the district court that he is a "dangerous special offender" under the statute. Instead he argues that the twelve year sentence imposed violates that part of 18 U.S.C. § 3575 which provides "the court shall sentence the defendant to imprisonment for an appropriate term not to exceed twenty-five years and *not disproportionate in severity to the maximum term otherwise authorized by law for such felony* " (emphasis added). Felder asserts that a twelve year sentence is disproportionate to the two year maximum otherwise authorized for the predicate offense.

### A.

The dangerous special offender provision originated as part of Title X of the Organized Crime Control Act of 1970, Pub.L. No. 91–452, § 1001, 84 Stat. 922, 948–50. As originally reported by the Senate Judiciary Committee, the section simply provided that if a defendant was found to be a dangerous special offender, "the court shall sentence the defendant to imprisonment for a term not to exceed thirty years." S.Rep. No. 617 at 29. No proportionality requirement was included.

The language requiring proportionality was added at the recommendation of the American Bar Association (which also recommended that the maximum sentence be reduced from thirty to twenty-five years). *See* H.R.Rep. No. 1549, 91st Cong., 2d Sess. 61, 97, *reprinted in* 1970 U.S.Code Cong. & Ad.News 4007, 4037, 4066. The ABA had previously endorsed the principle that any special increased term for certain classes of felons (such as recidivists) should be proportional to the term for the underlying felony. *See* ABA Standards Relating to Sentencing Alternatives and Procedures §§ 3.1(c), 3.3(a) (Approved Draft 1968). The proportionality requirement in section 3575 is modeled upon the proportionality requirement in sections 3–1 and 3–3 of those Standards. *See United States v. Stewart,* 531 F.2d at 330. An examination of the rationale behind the ABA's adoption of proportionality may illume the statutory language at issue.

Essentially the ABA wished to ensure that the sentence for an offense remained at least partially focused on that offense rather than on prior conduct or other factors.

> It may well be that one who has committed [a comparatively minor felony] will pose such a public danger that a [severe] term . . . is called for. But he would have posed just as much of a danger before he committed the offense as he

does after. A sentence of this magnitude no longer bears any reasonable relationship to the event which triggered its possibility. The major thrust of the proceeding has shifted from the offense to the status of the offender. A proceeding which can result in such a long sentence ought to assume the burden of depending initially and primarily on the criteria which justify it, rather than employ[ing] the vehicle of a relatively minor felony to approach the same end indirectly. Such an indirect approach gives rise to all manner of difficulties, ranging from procedural questions of confrontation of witnesses and proof beyond a reasonable doubt to the punishment of status and the moral, if not legal, questions of cruel and unusual punishment.

Standards Relating to Sentencing Alternatives and Procedures § 3.1 comment d.

To achieve the end of proportionality, the ABA recommended that the maximum term of a "special" felon be explicitly related in the applicable statute to the severity of the underlying felony. *Id.* This structure is adopted, for instance, by the Model Penal Code, which divides felonies into three classes and then provides a different maximum special term for each class. *See* Model Penal Code §§ 6.06, 6.07 (1962).

Section 3575, however, provides for a single maximum term—twenty-five years—for all "dangerous special offenders", no matter what the severity of their underlying felony. Thus in the present case Felder could have been sentenced to any term up to the full twenty-five years, which would have been twelve and one half times greater than the otherwise allowable maximum. The legislative history of section 3575 provides some assistance to the sentencing court and the reviewing court in determining how to sentence within that wide possible range of imprisonment. Since Congress adopted the ABA's recommendation and included language imposing the principle of proportionality, the courts must ensure that the initial focus of the sentencing process remains the felony for which the defendant was convicted.

### B.

The appellant proposes a direct, uncomplicated approach to this problem. He suggests that proportionality means a maximum section 3575 term no more than two to three times the otherwise allowable maximum sentence for the felony.

There is some extrinsic support for this proposition. The sentencing provisions of the Model Penal Code, in general, exactly double the permissible maximum sentence for a recidivist or other special felon. *See* Model Penal Code §§ 6.06, 6.07 (1962).[3] The sentencing provisions proposed by the National Commission on Reform of Federal Criminal Laws increase the permissible maximum sentence for a dangerous special offender by a factor of approximately one and one half. *See* Final Report of the National Commission on Reform of Federal Criminal Laws §§ 3201, 3202 (1971).[4]

Furthermore on several occasions the omnibus criminal law reform bills periodically introduced in Congress have proposed that the maximum dangerous special offender term should be approximately twice as long as the otherwise allowable maximum for the particular felony. *See, e.g.,* H.R. 10850, 94th Cong., 1st Sess. § 2301 (1975) (maximum term extended from 15 to 30 years for Class A felonies and from 7 to 15 years for Class B felonies); H.R. 3907, 94th Cong., 1st Sess. § 2301 (1975) (maximum term for dangerous special offenders not more than

**3.** Thus the normal maximum sentence for a second degree felony is ten years while the maximum term for a special second degree felon is twenty years. Likewise the maximum sentence for a special third degree felon increases from five to ten years. It is difficult to evaluate the first degree felony structure because the maximum punishment can be life imprisonment.

**4.** Specifically the permissible maximum for a Class A felony rises from 20 to 30 years of imprisonment. The permissible maximum for a Class B felony rises from 10 to 15 years. The permissible maximum for a Class C felony rises from 5 to 7 years.

twice the authorized maximum for the underlying felony); S. 1, 93d Cong., 1st Sess. §§ 1–4B1, 1–4B2 (1973) ("upper range" terms reserved for dangerous special offenders twice the otherwise allowable maximum for Class B, C and D felonies and one and one half times the allowable maximum for Class A felonies).[5]

We reject appellant's suggestion that we adopt a specific and rigid ratio of proportionality. Congress could have adopted a statute that specified the maximum allowable dangerous special offender term in terms of a fixed multiple of the maximum term for the underlying felony. It did not do so when the statute was enacted, and has not done so notwithstanding the proposals for change. Therefore, were we to adopt a rule that Congress has eschewed, we would be intruding upon its legislative prerogative. Indeed, no other federal court, to our knowledge, has adopted a fixed rule.[6] Our reluctance to adopt a strict definition of proportionality, however, does not mean that the courts are relieved of the obligation of abiding by the statutory requirement of proportionality.

## C.

■ In order to give effect to the proportionality requirement, the court imposing a sentence under the dangerous special offender provision must keep sight of the fact that the maximum sentence for the under-

lying felony is the only legitimate base for a proportional section 3575 sentence. In that way the underlying felony, which is the reason that the defendant is in court in the first place, will retain its central place in sentencing. The extent to which that sentence should be augmented will depend on a number of factors, such as the nature and seriousness of the conduct which led to the defendant's characterization as a dangerous special offender in the first place. Thus, for defendants characterized as dangerous special offenders because of recidivism, called "hard-core repeaters" by the Senate, see S.Rep. No. 617 at 87, the number, type and timing of the prior offenses will be relevant, as well as "information about the defendant, his crime, and the context in which it was committed." *Id.* at 91. The appropriate sentence for the professional criminal or the organized crime offender will clearly depend on the nature of the conduct making the defendant a professional or organized crime offender in the first place, which "is closely related to the felony for which he is to be sentenced." *Id.; cf. United States v. Neary,* 552 F.2d 1184, 1193–95 (7th Cir.) (appropriate length of a section 3575 sentence depends on defendant's dangerousness), *cert. denied,* 434 U.S. 864, 98 S.Ct. 197, 54 L.Ed.2d 139 (1977).

Finally, the dangerous special offender statute expressly provides:

> tionality is enforced, at least partially, by the fact that a dangerous offender's sentence is limited by the maximum provided for the class of felony involved.

---

**5.** More recent Congressional reform efforts have taken a different approach to dangerous special offender sentencing. The newer omnibus bills tend to divide felonies into five classes with different maximum sentences; sentencing within those classes is to be guided by the promulgation of nationwide sentencing guidelines. *See, e.g.,* H.R. 5679, 97th Cong., 2d Sess. §§ 3701 *et seq.,* 4301 *et seq.* (1982); H.R. 6915, 96th Cong., 2d Sess. §§ 3701 *et seq.,* 4301 *et seq.* (1980); S. 1722, 96th Cong., 1st Sess. §§ 2301 *et seq.,* 2003 (1979); S. 1437, 95th Cong., 1st Sess. §§ 2301 *et seq.,* 2003 (1977). Although the procedure of a separate sentencing statute for dangerous special offenders is dropped from these proposals, the guidelines are to be structured so as to ensure substantial terms for such felons. *See* Criminal Code Reform Act of 1977: Report of the Committee on the Judiciary, United States Senate to accompany S. 1437, S.Rep. No. 605, 95th Cong., 1st Sess. 930 (1977). Under this system propor-

**6.** We have found only three reported cases in which a specific challenge to the proportionality of a dangerous special offender sentence was made. In *United States v. Moccia,* 681 F.2d 61, 66 (1st Cir.1982) (construing sister statute), a fifteen year sentence was upheld when the maximum for the underlying felony was eight years. In *United States v. Williamson,* 567 F.2d 610, 616–17 (4th Cir.1977), an eight year sentence was upheld when the maximum for the underlying felony was two years. *See also Watkins v. United States,* 564 F.2d 201, 207–08 (6th Cir.1977) (proportionality challenge dismissed as moot), *cert. denied,* 435 U.S. 976, 98 S.Ct. 1626, 56 L.Ed.2d 71 (1978).

The [sentencing] court shall place in the record its findings, including an identification of the information relied upon in making such findings, and *its reasons for the sentence imposed.*

18 U.S.C. § 3575(b) (emphasis added). This statutory mandate necessitates a change from our usual procedure of not requiring the trial courts to state reasons for the particular sentences imposed. *See, e.g., United States v. Montoya,* 612 F.2d 792, 793 (3d Cir.1980); *United States v. Del Piano,* 593 F.2d at 540. *But see United States v. Bazzano,* 570 F.2d 1120, 1130–38 (3d Cir. 1977) (Adams, J., concurring in the judgment), *cert. denied,* 436 U.S. 917, 98 S.Ct. 2261, 56 L.Ed.2d 757 (1978). Here Congress has mandated that the sentencing court do so, and strict compliance with this mandate is required so that this court can fulfill its statutory obligation of review and can, as requested in this case, determine whether the proportionality requirement has been properly considered.

### IV.

In the instant case, the sentencing judge gave Felder a twelve year sentence. At no time in the proceeding did the trial judge refer to the otherwise applicable two year maximum for Felder's felony, nor did the court indicate why a twelve year sentence, constituting a six fold augmentation, was proportionate. We decline to exercise our statutory right to impose the sentence ourselves. Instead, we will vacate the sentence and remand for resentencing in accordance with the statutory requirements.