**UNITED STATES of America, Plaintiff-Appellee,**

v.

**Jimmy Ruben SOTO, Defendant-Appellant.**

No. 84–1238.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted March 11, 1985.

Decided Jan. 3, 1986.

Ivan S. Abrams, Asst. U.S. Atty., Fresno, Cal., for defendant-appellant.

Stevan Noxon, Asst. Fed. Public Defender, Fresno, Cal., for plaintiff-appellee.

Before MERRILL, WALLACE and POOLE, Circuit Judges.

POOLE, Circuit Judge:

Jimmy Ruben Soto was convicted of possession of a firearm by a felon in violation of 18 U.S.C. App. § 1202(a)(1) (Count I) and of possession of an unregistered sawed-off shotgun in violation of 26 U.S.C. § 5861(d) (Count IV). The trial judge found Soto to be a dangerous special offender under 18 U.S.C. § 3575(a). He initially sentenced Soto to the maximum terms of 2 years on Count I and 10 years on Count IV with an enhancement term of 25 years as a result of the dangerous special offender finding to be served consecutively for a total of 37 years. The judge later corrected the sentence; he imposed a sentence of 12 years on Count I and 25 years on Count IV with the sentences to run consecutively. Soto timely appealed.

**FACTS**

On January 29, 1984, at approximately 8:20 p.m., the Stanislaus County Sheriff's deputy stopped a red Chevrolet van about six miles outside the city limits of Modesto. The van was occupied by three people: Armando Santistevan was driving; Soto was seated in the front passenger seat; and James Galindez was in the back of the van. When the deputy approached the van, he observed a sawed-off shotgun, partially concealed, on the left side of the van about four feet behind the driver's seat. He ordered the occupants out of the van and conducted a search of it.

The search uncovered three pistols and the sawed-off shotgun. Two of the pistols were found behind Soto's seat and within his reach; the third was found in the middle of the van near the right rear wheel-well. An evidence technician for the Modesto Police Department subsequently obtained a latent print from the inside of the grey duct tape which had been wrapped around the stock of the shotgun; the print compared positively to Soto's right index finger. A Modesto police officer testified that he overheard Soto tell Santistevan at a state court proceeding that Soto's print had been found on the tape and that he could not understand how that could have been possible unless he had touched the tape as he was putting it on. Soto and Santistevan recall having some conversation about the fingerprint, but claim that the officer's version was incorrect.

Santistevan testified that Soto was staying at Santistevan's home in Oakland. Soto left Oakland on the morning of January 29th to go to Modesto; he called Santistevan's house during the day because he needed a ride back to Oakland. Santistevan was going to Modesto with Galindez to try to sell the guns; he agreed to pick Soto up and take him back to Oakland.[1] Santis-

---

1. Santistevan pled guilty to possession of the three pistols in violation of 18 U.S.C.App. § 1202(a). The charge against him of possession of an unregistered sawed-off shotgun in violation of 26 U.S.C. § 5861(d) was dropped.

tevan testified that all of the weapons were in his sole possession and that Soto had never seen the weapons before Santistevan picked him up in Modesto. He testified that the van belonged to him even though it was registered to his sister. He said that Soto tore off a piece of duct tape and handed it to him while Soto was working on a refrigerator, and that Soto did not know that he used the tape to wrap the stock of the shotgun. He said that he had been wearing the two guns found behind Soto's seat, in a shoulder holster and in his belt when the police stopped the van; he dropped the guns and the holster on the floor of the van as he was leaving it. The other pistol and the shotgun were concealed in the rear of the van. Soto had been in the van only ten minutes before it was stopped by the police.

Soto testified that he had not seen any firearms in the van until the officers ordered them out of the van.

## DISCUSSION

### I. Sufficiency of the Evidence

Soto challenges the sufficiency of the evidence to sustain the conviction under section 1202(a) of possessing the three pistols found in the van. In reviewing the sufficiency of the evidence, we determine whether any rational trier of fact could have found all the essential elements of the crime beyond a reasonable doubt. *United States v. Ramirez*, 710 F.2d 535, 545 (9th Cir.1983). The test is whether the evidence and all reasonable inferences which may be drawn from it, when viewed in the light most favorable to the government, sustain the verdict. *United States v. Beecroft*, 608 F.2d 753, 756 (9th Cir.1979).

█ Soto challenges only the evidence on the element of possession; he admits he is a convicted felon within the meaning of the statute and that the guns moved in interstate commerce. The element of possession does not require proof of exclusive actual possession; it may be satisfied by proof of constructive or joint possession. *United States v. Alverson*, 666 F.2d 341, 345 (9th Cir.1982) (quoting *United States v. Kalama*, 549 F.2d 594, 596 (9th Cir.1976),

*cert. denied*, 429 U.S. 1110, 97 S.Ct. 1147, 51 L.Ed.2d 564 (1977)). "[T]o establish constructive possession, the government must produce evidence showing ownership, dominion, or control over the contraband itself or the premises or vehicle in which contraband is concealed." *United States v. Smith*, 591 F.2d 1105, 1107 (5th Cir.1979) (quoting *United States v. Ferg*, 504 F.2d 914, 916–17 (5th Cir.1974)).

█ It is well established that mere presence as a passenger in a car from which the police recover weapons does not establish possession. *United States v. Flenoid*, 718 F.2d 867, 868 (8th Cir.1983) (per curiam); *United States v. Whitfield*, 629 F.2d 136, 143 (D.C.Cir.1980), *cert. denied*, 449 U.S. 1086, 101 S.Ct. 875, 66 L.Ed.2d 812 (1981); *United States v. Williams*, 630 F.2d 1322, 1327 (9th Cir.), *cert. denied*, 449 U.S. 865, 101 S.Ct. 197, 66 L.Ed.2d 83 (1980); *United States v. Thomas*, 453 F.2d 141, 143 (9th Cir.1971) (per curiam), *cert. denied*, 405 U.S. 1069, 92 S.Ct. 1516, 31 L.Ed.2d 801 (1972); *Bettis v. United States*, 408 F.2d 563, 567–69 (9th Cir.1969); *see also United States v. Bernal*, 719 F.2d 1475, 1479 (9th Cir.1983) (possession as defined under Nevada state law). The mere proximity of a weapon to a passenger in a car goes only to its accessibility, not to the dominion or control which must be proved to establish possession. *Whitfield*, 629 F.2d at 143; *Bettis*, 408 F.2d at 567.

█ The evidence presented in this case established no more than the mere proximity of the weapons to passenger Soto. The evidence of Soto's fingerprint on the tape wrapped around the stock of the shotgun was sufficient to establish possession of the shotgun, but not to establish possession of other weapons located in different places inside a van owned by someone else. No other evidence suggests that Soto knew that the guns were in the van, much less that he had dominion or control over them. The defense provided evidence, which the government was unable to contradict, that Soto had been in the van only ten minutes before the van was stopped by the police,

that it was dark when he entered the van, and that he did not know that the weapons were in the van until the police ordered them to leave the van. The government's evidence establishes only that Soto was in the van when it was stopped and that the weapons were accessible to him from where he was sitting in the passenger seat. The evidence established as well, however, that the weapons were easily accessible to the driver and the other passenger of the van. Such evidence is insufficient to support a finding of possession. *See Thomas,* 453 F.2d at 143; *Bettis,* 408 F.2d at 567. The government's failure to present evidence connecting Soto with the weapons leaves us unable to conclude that any rational trier of fact could have found possession beyond a reasonable doubt. *Cf. Flenoid,* 718 F.2d at 868–69 (evidence sufficient when officer testified that passenger may have placed something in spot where police later found weapon); *United States v. Ramos,* 476 F.2d 624, 626 (9th Cir.) (evidence sufficient when passenger possessed key to trunk containing contraband), *cert. denied,* 414 U.S. 836, 94 S.Ct. 182, 38 L.Ed.2d 72 (1973). Soto's conviction on Count I of possessing firearms in violation of 18 U.S.C.App. § 1202(a)(1) is reversed.

## II. Sentencing under Dangerous Special Offender Statute

Soto challenges the imposition of an enhanced sentence under the dangerous special offender statute, 18 U.S.C. § 3575,[2] on several grounds. We are authorized to review the district court's imposition of an enhanced sentence by 18 U.S.C. § 3576. That section provides in part:

> Review of the sentence shall include review of whether the procedure employed was lawful, the findings made were clearly erroneous, or the sentencing court's discretion was abused. The court of appeals on review of the sentence may, after considering the record, including the entire presentence report, information submitted during the trial of such felony and the sentencing hearing, and the findings and reasons of the sentencing court, affirm the sentence, impose or direct the imposition of any sentence which the sentencing court could origi-

**2.** 18 U.S.C. § 3575 provides in part:

(a) Whenever an attorney charged with the prosecution of a defendant in a court of the United States for an alleged felony committed when the defendant was over the age of twenty-one years has reason to believe that the defendant is a dangerous special offender such attorney, a reasonable time before trial or acceptance by the court of a plea of guilty or nolo contendere, may sign and file with the court, and may amend, a notice (1) specifying that the defendant is a dangerous special offender who upon conviction for such felony is subject to the imposition of a sentence under subsection (b) of this section, and (2) setting out with particularity the reasons why such attorney believes the defendant to be a dangerous special offender. * * *

(b) Upon any plea of guilty or nolo contendere or verdict or finding of guilty of the defendant of such felony, a hearing shall be held, before sentence is imposed, by the court sitting without a jury. * * * If it appears by a preponderance of the information, including information submitted during the trial of such felony and the sentencing hearing and so much of the presentence report as the court relies upon, that the defendant is a dangerous special offender, the court shall sentence the defendant to imprisonment for an appropriate term not to exceed twenty-five years and

not disproportionate in severity to the maximum term otherwise authorized by law for such felony. * * *

* * * * * *

(e) A defendant is a special offender for purposes of this section if—

(1) the defendant has previously been convicted in courts of the United States, [or] a State, * * * for two or more offenses committed on occasions different from one another and from such felony and punishable in such courts by death or imprisonment in excess of one year, for one or more of such convictions the defendant has been imprisoned prior to the commission of such felony, and less than five years have elapsed between the commission of such felony and either the defendant's release, on parole or otherwise, from imprisonment for one such conviction or his commission of the last such previous offense or another offense punishable by death or imprisonment in excess of one year * * *;

* * * * * *

(f) A defendant is dangerous for purposes of this section if a period of confinement longer than that provided for such felony is required for the protection of the public from further criminal conduct by the defendant.

nally have imposed, or remand for further sentencing proceedings and imposition of sentence * * *.

*Id.* Thus, the scope of review under this section is broader than under the usual criminal case. *United States v. Felder,* 706 F.2d 135, 137–38 (3d Cir.1983); *see United States v. Stewart,* 531 F.2d 326, 331 (6th Cir.) (power of review unrestricted), *cert. denied,* 426 U.S. 922, 96 S.Ct. 2629, 49 L.Ed.2d 376 (1976).

### A. Adequacy of Notice of Dangerous Special Offender Proceeding

#### 1. Timeliness

18 U.S.C. § 3575(a) requires the government to file "a reasonable time before trial "a notice specifying that it believes the defendant is a dangerous special offender who upon conviction should be subject to imposition of a sentence under subsection (b). The notice must also set out with particularity the reasons why the government believes the defendant to be a dangerous special offender. *Id.*

■ Soto contends that the government failed to file its notice "a reasonable time before trial." The government filed the notice on June 18, 1984; the trial took place on June 26. Moreover, the government contends, and Soto does not deny, that it gave Soto oral notice of its intention to proceed under section 3575 within weeks of the defendant's initial appearance on the indictment on April 6.

The government's notice was timely filed. It advised Soto of the risk he ran should he plead guilty. *See United States v. Fatico,* 458 F.Supp. 388, 407 (E.D.N.Y. 1978), *aff'd,* 603 F.2d 1053 (2d Cir.1979), *cert. denied,* 444 U.S. 1073, 100 S.Ct. 1018, 62 L.Ed.2d 755 (1980). It also alerted him, over one month before the hearing on the issue,[3] to the special circumstances upon which the prosecution was going to rely to demonstrate that he was dangerous. *See United States v. Ilacqua,* 562 F.2d 399, 403 (6th Cir.1977), *cert. denied,* 435 U.S. 906, 98 S.Ct. 1453, 55 L.Ed.2d 497 (1978). Soto does not claim that he was prejudiced by

the allegedly untimely filing of the notice, and no prejudice appears in the record. Therefore the notice was filed "a reasonable time before trial" as required by section 3575(a).

#### 2. Dangerousness

■ The notice filed by the prosecution states that it intends to designate Soto a dangerous special offender under 18 U.S.C. § 3575(a) and gives as its grounds Soto's numerous prior convictions. It lists the dates and offenses on which he was convicted. Soto concedes that he falls within the definition of special offender contained in 3575(e)(1) but contends that the notice failed to set out with particularity the reasons why the prosecution believed him to be dangerous as defined in 3575(f).

The notice was sufficient to satisfy the particularity requirement of the statute. " 'Dangerousness' may be inferred, although not necessarily, from the establishment of the requirements of subsection (e) [special offender status]." *United States v. Ilacqua,* 562 F.2d at 403 (emphasis deleted) (quoting S.Rep. 91–617, 91st Cong., 1st Sess. 166 (1969) ). A list of prior convictions may be used by the government as grounds for its belief that the defendant is dangerous. *United States v. Pugh,* 720 F.2d 1255, 1258 (11th Cir.1983) (citing with approval *United States v. Warme,* 572 F.2d 57, 61 (2d Cir.), *cert. denied,* 435 U.S. 1011, 98 S.Ct. 1885, 56 L.Ed.2d 393 (1978) ). The number and nature of the prior convictions listed in the notice, which included burglary, manslaughter, kidnapping, robbery, and assault by an inmate, were sufficient to satisfy the requirement that the basis for a claim of dangerousness be stated with particularity. *See United States v. Cox,* 719 F.2d 285, 288 (8th Cir.1983), *cert. denied,* 464 U.S. 929, 104 S.Ct. 1714, 80 L.Ed.2d 186 (1984).

### B. Legality of Sentence under 18 U.S.C. § 3575

Soto argues that the district court erred in imposing the sentence because it exceed-

---

**3.** Notice was filed June 18, 1984, trial commenced June 26, and the hearing on Soto's status as a dangerous special offender took place on July 23.

ed the maximum sentence provided in section 3575(b). Section 3575(b) provides in part:

> If it appears by a preponderance of the information, * * *, that the defendant is a dangerous special offender, the court shall sentence the defendant to imprisonment for an appropriate term not to exceed twenty-five years and not disproportionate in severity to the maximum term otherwise authorized by law for such felony.

18 U.S.C. § 3575(b). Soto interprets the statute as authorizing the imposition of a maximum sentence of twenty-five years in a dangerous special offender proceeding regardless of the number of counts upon which the defendant is convicted. A defendant could only be sentenced for a longer term if the offense itself is punishable by death or a term exceeding twenty-five years. 18 U.S.C. § 3575(c). Soto was sentenced to thirty-seven years: 2 years on Count I (18 U.S.C.App. § 1202(a)(1)) plus 10 years enhancement of Count I under § 3575, and 10 years on Count IV (26 U.S.C. § 5861(d)) plus 15 years enhancement. We need not resolve this issue, however, because we have reversed Soto's conviction on Count I and the 25-year sentence imposed on Count IV does not exceed the maximum provided by section 3575(b).

Section 3575(b) also requires that the sentence imposed "not [be] disproportionate in severity to the maximum term otherwise authorized by law for such felony." 18 U.S.C. § 3575(b). Soto argues that the sentence on each count is disproportionate to the maximum term authorized for each felony. The government responds that the sentences are proportionate when considered in light of Soto's prior convictions. We need consider only the proportionality of the sentence imposed under Count IV.

There is no set formula for determining whether a sentence under section 3575(b) is proportionate to the maximum term authorized for the underlying felony. *See United States v. Pleasant*, 730 F.2d 657, 663 (11th Cir.), *cert. denied*, —— U.S. ——, 105 S.Ct. 216, 83 L.Ed.2d 146 (1984); *United*

*States v. Felder*, 706 F.2d 135, 140 (3d Cir.1983). Although the underlying felony should retain its central place in sentencing, *Felder*, 706 F.2d at 140, the nature and seriousness of defendant's prior convictions is relevant as well. *See Pleasant*, 730 F.2d at 663; *Felder*, 706 F.2d at 140; *United States v. Williamson*, 567 F.2d 610, 616 (4th Cir.1977).

The record of the dangerous special offender proceeding showed that Soto had six prior felony convictions. He had first been convicted and imprisoned in 1956 on a burglary charge. In 1959 he was convicted of assault by an inmate and destruction or injury to prison. Also in 1959, Soto was convicted of escape from custody, kidnapping, and manslaughter. He was released on parole in March of 1976, arrested in August, and convicted in 1977 of armed robbery. He was released on parole in August of 1979 and convicted in June and July of 1980 of armed robbery in two different counties. He was next released on December 11, 1983, and arrested on the weapons charges at issue here on January 29, 1984. Since 1956, Soto has been out of prison a total of less than two years.

■ In light of Soto's prior convictions, enhancement of his sentence to 25 years is not disproportionate in severity to the 10-year maximum term authorized for the underlying felony under section 5861(d). *See Pleasant*, 730 F.2d at 662 (enhancement of 10-year maximum sentence to 21 years proportionate); *see also United States v. Felder*, 744 F.2d 18, 20–21 (3d Cir.1984) (10-year sentence under section 3575 not disproportionate to 2-year maximum sentence authorized for underlying offense); *United States v. Davis*, 710 F.2d 104, 109–10 (3d Cir.) (12-year sentence under section 3575 not disproportionate to 2-year maximum sentence authorized for underlying offense), *cert. denied*, 464 U.S. 1801, 104 S.Ct. 505, 78 L.Ed.2d 695 (1983).

**C. Review of Sentence under 18 U.S.C. § 3576**

Soto requests that this court review the sentence under the broad power granted it

under section 3576. He contends that the sentence is improper because Santistevan, his co-defendant, was only sentenced to two years imprisonment after he pled guilty to possession of the three handguns under 18 U.S.C.App. § 1202(a) and was not designated a dangerous special offender. He also relies on the probation office's recommendation of a maximum term of 12 years imprisonment.

Although we decline to find the sentence imposed for Count IV improper, we nonetheless remand to the district court for reconsideration of Soto's sentence since his conviction on both counts may have affected the punishment set for Count IV. *See United States v. Aguilar,* 756 F.2d 1418, 1424 (9th Cir.1985) (remand because conviction on reversed count may have affected sentence on other count). *Cf. United States v. Ray,* 731 F.2d 1361, 1368 (9th Cir.1984) (no need to remand for resentencing where nothing in record suggests reversed counts enhanced sentences on other counts). By doing so we imply no position what the sentence shall be on remand. *See United States v. Rizzo,* 491 F.2d 1235, 1236 (2d Cir.1974) (per curiam).

The judgment of the district court is

AFFIRMED IN PART, REVERSED IN PART, and REMANDED for reconsideration of sentencing on Count IV.

WALLACE, Circuit Judge, dissenting:

The majority opinion properly analyzes the issues and comes to the proper conclusion except for the ordered remand for reconsideration of sentencing. From that, I dissent.

The majority did not hold that the sentence imposed on count IV was improper, but remanded "for reconsideration of Soto's sentence since his conviction on both counts *may have affected* the punishment set for Count IV." Maj. op. at 564 (emphasis added). The majority relies on *United States v. Aguilar,* 756 F.2d 1418 (9th Cir.1985), to support its remand for resentencing. I interpret that case differently.

In *Aguilar,* the defendant was convicted on three separate counts. The original indictment included two clauses under each count: (1) falsely acting as an Immigration and Naturalization Service agent, and (2) obtaining money while acting as an INS agent. The government elected at trial only to proceed under the first clause of each count to avoid a problem of multiplicity. *Id.* at 1421. The district court, however, convicted the defendant based on violations of both clauses under counts I and II. The court found the defendant guilty under count III only on the first clause. *Id.* We concluded that the second clause of counts I and II had been effectively dismissed by the government and, as a result, remanded for resentencing because the district court's sentencing on counts I and II could have been influenced by the fact that the court found the defendant guilty of violating both clauses. *Id.* at 1424. We *did not* remand for resentencing on count III since the district court's sentencing under that count was based on a violation of only the first clause. *Id.* at 1425. *Aguilar,* therefore, stands for the proposition that a remand for resentencing under an individual count may be necessary when a district court erroneously convicts a defendant based on one or more clauses under that count. Since we did not remand for resentencing under count III, *Aguilar* actually provides more support for not remanding to resentence Soto on count IV than it does for the remand fashioned by the majority.

The majority also cites *United States v. Ray,* 731 F.2d 1361 (9th Cir.1984), but that case would not require a remand either. There we vacated convictions on two counts because they were multiplicitous. We did not remand for resentencing, however, "[b]ecause the sentences for counts 5 and 8 run concurrently with sentences for several other counts, and because nothing in the record suggests that counts 5 and 8 enhanced the sentences on the other counts." *Id.* at 1368. *Ray* suggests that a remand for resentencing is unnecessary unless there is a basis in the record to indicate that enhancement has occurred.

The record in this case presents no evidence that the district court was influenced to give a heavier sentence under count IV, which was the more serious violation, because of the conviction under count I. Indeed, the district judge's sentencing of Soto to consecutive sentences tends to show the contrary: that the district judge considered each count separately.

I fear that any reversal of one count in a multiple count conviction will now automatically be considered to have met the majority's "may have affected" test. No precedent requires such a result nor should it be adopted. It is counterproductive to the orderly administration of the criminal justice system.

Here, there is no basis in the record to conclude that the district judge gave a greater sentence on count IV due to Soto's conviction on count I. The majority's speculation is not an appropriate substitute.